UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NICHOLAS J. DUBOIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 09-2176 (RJL) |
| | ) |
| WASHINGTON MUTUAL BANK, in | ) |
| receivership, *et al.*, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION
(September 2, 2010) [#7, #12, #20, #22, #24]

Plaintiff, Nicholas J. Dubois ("Dubois"), a licensed attorney acting *pro se*, brings this action alleging, *inter alia*, breach of contract, fraud, and civil conspiracy against Washington Mutual Bank ("WaMu"), in receivership; JP Morgan Chase Bank, N.A. ("JP Morgan"); Chase Home Finance, LLC ("Chase Home Finance"); Federal National Mortgage Association ("Fannie Mae"); Federal Deposit Insurance Corporation, in its corporate capacity ("FDIC-Corporate") and in its capacity as receiver for WaMu ("FDIC-Receiver"); Finestein & Malloy, L.L.C ("FMLLC"); and Tait O. Norton ("Norton" and, together with JP Morgan, Chase Home Finance, Fannie Mae, FDIC-Corporate, FDIC-Receiver, and FMLLC, the "defendants").[1] Currently pending are Motions to Dismiss filed on behalf of each defendant. For the following reasons, the defendants' motions are GRANTED.

---

[1] Dubois voluntarily dismissed his claims against the Federal Housing Finance Agency on March 15, 2010. *See* Notice of Dismissal, Mar. 15, 2010 [#17].

## BACKGROUND

This case arises out of a dispute over a mortgage loan. On or about June 25, 2001, Dubois executed a note and mortgage in favor of non-party HomeSide Lending, Inc., which was subsequently acquired by WaMu in October 2002. Compl. ¶ 18. In November 2002, Fannie Mae, as successor in interest to WaMu, filed an action in the Superior Court of New Jersey to foreclose on the mortgage. *Id.* ¶¶ 20-21. WaMu remained the servicing agent for the mortgage loan. *Id.* ¶¶ 19, 21, 105. Dubois removed the foreclosure action to the U.S. District Court for the District of New Jersey ("Removed Action") and asserted counterclaims against Fannie Mae and third-party claims against WaMu and non-party Shapiro & Diaz LLP, who served as Fannie Mae's original law firm in the state action. *Id.* ¶ 22. The Removed Action was settled by virtue of a Stipulation of Settlement and Order, entered August 9, 2004 (the "Settlement Order"). *Id.* ¶ 33. In addition, pursuant to the Settlement Order, WaMu and Dubois entered into a loan modification agreement on March 21, 2005, which was modified by letter dated June 10, 2005 ("Loan Modification Agreement"). *Id.* ¶¶ 60, 64.

According to the plaintiff, WaMu failed to comply with the terms of the Settlement Order as early as September 2004. *Id.* ¶ 37. He also asserts violations of the Settlement Order by Fannie Mae at some unspecified date, *id.* ¶ 38, along with an effort by FMLLC, Fannie Mae's counsel, to fraudulently force Dubois into default, *id.* ¶¶ 41-46. Dubois served WaMu with a notice of default and violation of the Settlement Order on December

3, 2004. *Id.* ¶ 49. Plaintiff further alleges that Norton, Vice President and Counsel at WaMu, sent a letter in October 2005 attempting to deceive Dubois into ratifying fraudulent notices. *Id.* ¶¶ 77-81. In addition, Plaintiff alleges that FMLLC mishandled payments that he made pursuant to the Settlement Order and Loan Modification Agreement, engaged in fraudulent behavior, and breached its fiduciary duty. *Id.* ¶¶ 48-53, 82-88. Communications between Dubois and FMLLC ended in January 2006. *Id.* ¶ 91.

On September 25, 2008, by order of the Office of Thrift Supervision, WaMu was closed and FDIC-Receiver was appointed receiver of WaMu. *Id.* ¶¶ 105-06. According to the plaintiff, FDIC-Receiver sold substantially all of WaMu's assets to JP Morgan under a Purchase and Assumption Agreement. *Id.* ¶ 106. On April 9, 2009, Dubois filed a proof of claim pursuant to 12 U.S.C. § 1821(d) with FDIC-Receiver. *Id.* ¶¶ 108-09. FDIC-Receiver denied his claim on September 18, 2009. *Id.* ¶ 110. Dubois then filed this lawsuit on November 17, 2009, naming WaMu, JP Morgan, Chase Home Finance, Fannie Mae, FDIC-Corporate, FDIC-Receiver, the Federal Housing Finance Agency, FMLLC, and Norton, along with XYZ Corporations 1-10, John Does 1-10 and Jane Does 1-10, as defendants. All in all, he is asserting twenty-two claims for relief.

## ANALYSIS

### I. Standard of Review

Defendants move to dismiss the respective claims filed against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6). Because subject-matter jurisdiction focuses on a court's

power to hear the plaintiff's claim, a Rule 12(b)(1) motion to dismiss imposes on a court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, the Court may give a plaintiff's factual allegations closer scrutiny in resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction than a 12(b)(6) motion for failure to state a claim. *Id.* at 13-14. At the same time, the Court is also mindful of its duty to read Dubois's allegations liberally, as he is a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (stating that if a court has determined that a plaintiff has asserted "well-pleaded factual allegations," the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief").

In this case, however, not even a liberal interpretation of plaintiff's pleadings can salvage a single one of his claims from being dismissed. How so? Let's look at the claims as to each defendant individually.

## II. JP Morgan

JP Morgan is named as a defendant for fourteen common law claims: equitable fraud (Count One), negligent misrepresentation (Count Two), legal fraud (Count Three), fraud in the inducement (Count Four), conversion (Count Five), tortious interference with prospective economic advantage (Count Six), civil conspiracy (Count Seven), negligence (Count Nine), breach of contract (Count Twelve), breach of implied covenant of good faith and fair dealing (Count Thirteen), constructive fraud in contract (Count Fourteen), unjust enrichment (Count Fifteen), promissory estoppel (Count Sixteen), and his claim for declaratory relief (Count Twenty-Two). JP Morgan is also named as a defendant for two claims pursuant to New Jersey law: consumer fraud in violation of N.J. Stat. Ann. §§ 56:8-1 to -48 (Count Eight) and violation of the New Jersey Fair Credit Reporting Act ("NJFCRA"), N.J. Stat. Ann. § 56:11-28 (Count Nineteen). Finally, JP Morgan is named as a defendant for three more claims pursuant to federal law: violation of the Real Estate Settlement Procedures Action ("RESPA"), 12 U.S.C. § 2605 (Count Seventeen), violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 (Count Eighteen), and violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 (Count Twenty-One).

JP Morgan moves to dismiss all claims asserted against it under Rule 12(b)(6) because it is not liable for the alleged actions of WaMu. I agree. Plaintiff's claims against JP Morgan arise out of conduct allegedly performed by WaMu, a defunct entity.

Plaintiff only sued JP Morgan because it purchased asserts and certain liabilities of WaMu from FDIC-Receiver pursuant to a Purchase and Assumption Agreement in approximately September 2008—almost three years *after* the purported conduct alleged in the Complaint. *See* Compl. ¶¶ 106-07. Under the Purchase and Assumption Agreement ("P&A Agreement"), JP Morgan expressly disclaimed liabilities of WaMu that are "claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower . . . related in any way to any loan or commitment to lend made by WaMu" prior to September 25, 2008, when WaMu was placed into receivership.[2] JP Morgan, Chase Home Finance, & Norton's Mot. to Dismiss [#12] ("JP Morgan's Mot.") at 5 (citing P&A Agreement, *available at* http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf). In other words, the P&A Agreement expressly bars Dubois's claims against JP Morgan. *See Almaraz v. J.P. Morgan Chase*, No. C09-5569, 2010 WL 583646, at *1 (N.D. Cal. Feb. 16, 2010) (dismissing claims against JP Morgan as not assumed under the P&A Agreement with WaMu). Accordingly, all claims asserted against JP Morgan must be, and are, hereby DISMISSED.

---

[2] A court may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice without converting a motion to dismiss into one for summary judgment. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, Dubois made explicit reference to the P&A Agreement in his Complaint, *see* Compl. ¶ 106, and thus the Court considers the terms of that agreement in deciding JP Morgan's motion to dismiss.

## III. Norton

Norton is named as a defendant for ten common law claims: equitable fraud (Count One), negligent misrepresentation (Count Two), legal fraud (Count Three), fraud in the inducement (Count Four), conversion (Count Five), tortious interference with prospective economic advantage (Count Six), civil conspiracy (Count Seven), negligence (Count Nine), breach of fiduciary duty (Count Ten), and aiding and abetting fraud/concert of action (Count Eleven). Among other reasons, Norton moved to dismiss these claims under Rule 12(b)(6) based on the applicable statute of limitations.[3] I agree with Norton.

When exercising supplemental jurisdiction, the Court "applies the forum state's choice-of-law rules and the state statute of limitations indicated thereby." *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1463 (D.C. Cir. 1995). Because the District of Columbia treats the statute of limitations as a procedural issue rather than a substantive one, the law of the forum state applies, as it does with respect to all procedural matters. *Id.* at 1458. Accordingly, D.C. law provides the limitations period for plaintiff's state law claims. Under D.C. law, none of the claims asserted against Norton have a statute of limitations longer than three years. *See* D.C. Code § 12-301; *see also C&E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 261 (D.D.C. 2007) (three-year statute of limitations for fraud and negligent misrepresentation); *Clouser v.*

---

[3] With the claims against Norton disposed of based on the statute of limitations, there is no need to consider whether Norton personally participated in any of the purported wrongful conduct, nor whether the corporate veil should be pierced.

*Temporaries, Inc.*, 730 F. Supp. 1127 (D.D.C. 1989) (three-year statute of limitations for constructive fraud); *King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C. 1978) (statute of limitations for claims sounding in fraud is three years); *Forte v. Goldstein*, 461 A.2d 469, 472 (D.C. 1983) (three-year statute of limitations for conversion); *Habib v. Raytheon Co.*, 616 F.2d 1204, 1208 (D.C. Cir. 1980) (tortious interference and civil conspiracy claims governed by three-year statute of limitations); *Griggs v. Wash. Metro. Area Transit Auth.*, 232 F.3d 917, 919 (D.C. Cir. 2000) (three-year statute of limitations for negligence claims); *Mawalla v. Hoffman*, 569 F. Supp. 2d 253, 257 (D.D.C. 2008) (three-year statute of limitations for breach of fiduciary duty claims); *Hancock v. Homeq Servicing Corp.*, No. 05-0307, 2007 WL 1238746, at *9 (D.D.C. April 27, 2007) (three-year statute of limitations for aiding and abetting fraud claim). In addition, the D.C. Code states that the statutory period begins to run "from the time the right to maintain the action accrues." D.C. Code § 12-301. The District of Columbia applies the "discovery rule," which provides that the cause of action accrues "when the plaintiff knows or through the exercise of due diligence should have known of the injury." *Dist. of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C. 1995) (quoting *Burns v. Bell*, 409 A.2d 614, 617 (D.C. 1979)).

On its face, the Complaint reflects that as early as 2004 and, at the very latest, in January 2006, plaintiff was aware of defendants' supposed improprieties and, in fact, that he complained about defendants' purported wrongdoing in 2004 and 2005. *See* Compl.

¶¶ 42, 44, 48-49, 51-53, 56, 61, 63, 69, 71-73, 81, 84, 88, 91-92. However, Dubois did not commence this action until November 2009. Even assuming that every alleged act occurred as late as January 2006—which the Complaint itself does not even allege—plaintiff's claims are still barred by the applicable statutes of limitations. Furthermore, plaintiff's argument that the defendants' misconduct and his injuries are continuous to the present day, *see* Pl.'s Opp'n to JP Morgan's Mot. [#28] at 10, is unavailing because the District of Columbia employs the discovery rule. As stated above, according to the Complaint, Dubois knew of and complained about the defendants' alleged misconduct more than three year before commencing this lawsuit. Therefore, each of plaintiff's state law claims asserted against Norton accrued *more* than three years before commencement of the instant action. These claims are thus barred by the statute of limitations, and all claims against Norton are hereby DISMISSED.

## IV. Chase Home Finance

Chase Home Finance is named as a defendant for one common law claim, Dubois's claim for declaratory relief (Count Twenty-Two); one New Jersey state claim, violation of the NJCRA (Count Nineteen); and two federal claims, violation of the FCRA (Count Eighteen) and the FDCPA (Count Twenty-One). For the following reasons, each of these claims must also be dismissed.

First, Dubois's common law claim for declaratory relief against Chase Home Finance is barred by the statute of limitations for the same reasons as stated above. *See*

D.C. Code § 12-301(8). Second, Dubois's claim under the NJCRA is preempted by the FCRA. The FCRA states that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under Section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). The FCRA expressly exempts specific Massachusetts and California statutes from preemption. *See id.* Plaintiff's NJFCRA claim arises directly out of defendants' alleged furnishing of credit information to credit reporting agencies and, clearly, does not fall within either exempted statute. Therefore, his claim in Count Nineteen against Chase Home Finance is preempted and barred as a matter of law. *See, e.g., Okocha v. HSBC Bank USA, N.A.*, No. 08 Civ. 8650, 2010 WL 1244562, at *4 (S.D.N.Y. Mar. 25, 2010); *Mora v. Harley-Davidson Credit Corp.*, No. 1:08-cv-01453, 2009 WL 1953433, at *4 (E.D. Cal. July 7, 2009).

Third, Dubois's claim under the FCRA is time-barred as well. The FCRA expressly provides that any claim must be asserted no later than the earlier of (1) two years after the date of discovery of the purposed violation or (2) five years after the date of the purported violation. 15 U.S.C. § 1681p. Here, the Complaint alleges that Dubois knew of the purported violation—a supposed failure to retract negative credit information regarding Dubois from the credit reporting agencies to which Chase Home Finance allegedly reported—at least as early as October 2005, *see* Compl. ¶ 77, well over two

years before he filed the Complaint in November 2009.[4] Therefore, Count Eighteen must also be dismissed against Chase Home Finance.

Finally, plaintiff's claim under the FDCPA fails as a matter of law. The FDCPA makes it unlawful for debt collectors to use abusive tactics when collecting debts for others. The statute defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Dubois asserts that his mortgage loan was not in default when obtained by JP Morgan and Chase Home Finance, as creditor and mortgage servicing company, respectively. *See* Pl.'s Opp'n to JP Morgan's Mot. 26. What he fails to acknowledge, however, is that the FDCPA expressly excludes from the term "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Thus, in accordance with Dubois's own pleadings, Chase Home Finance is not a debt collector, and therefore Dubois has failed to state a claim upon which relief may be granted pursuant to the

---

[4] Nowhere in the portion of the Complaint that discusses the allegations relevant to Counts Eighteen and Nineteen does the plaintiff allege any conduct actually committed by Chase Home Finance. *See* Compl. ¶¶ 17-104. Rather, the allegations relevant to these two counts relate solely to WaMu and Fannie Mae, and Dubois has failed to identify any agreement by which Chase Home Finance could have been deemed to have acquired or assumed the liabilities of WaMu or Fannie Mae.

FDCPA. *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (reading the legislative history of 15 U.S.C. § 1692a(6) as "conclusively" indicating that "a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned"). Therefore, all claims against Chase Home Finance must be DISMISSED.

## V. FMLLC

Dubois asserts eleven common law claims against FMLLC: equitable fraud (Count One), negligent misrepresentation (Count Two), legal fraud (Count Three), fraud in the inducement (Count Four), conversion (Count Five), tortious interference with prospective economic advantage (Count Six), civil conspiracy (Count Seven), negligence (Count Nine), breach of fiduciary duty (Count Ten), aiding and abetting fraud/concert of action (Count Eleven), and promissory estoppel (Count Sixteen). As discussed above, all of plaintiff's common law claims are barred by the applicable statute of limitations and thus are DISMISSED. *See* D.C. Code § 12-301(8).

## VI. FDIC-Receiver

Dubois asserts fourteen common law claims against FDIC-Receiver: equitable fraud (Count One), negligent misrepresentation (Count Two), legal fraud (Count Three), fraud in the inducement (Count Four), conversion (Count Five), tortious interference with prospective economic advantage (Count Six), civil conspiracy (Count Seven), negligence (Count Nine), breach of contract (Count Twelve), breach of implied covenant of good

faith and fair dealing (Count Thirteen), constructive fraud in contract (Count Fourteen), unjust enrichment (Count Fifteen), promissory estoppel (Count Sixteen), and his claim for declaratory relief (Count Twenty-Two). *See* D.C. Code § 12-301; *see also Pardue v. Ctr. City Consortium Schs., Inc.*, 875 A.2d 669, 679 (D.C. 2010) (citing D.C. Code § 12-301(7) for three-year statute of limitations for breach of contract claims); *Murray v. Wells Fargo Home Mortgage*, 953 A.2d 308, 322 (D.C. 2008) (three-year statute of limitations for breach of implied covenant of good faith and fair dealing claims). Plaintiff also asserts two New Jersey state claims against FDIC-Receiver: consumer fraud in violation of N.J. Stat. Ann. §§ 56:8-1 to -48 (Count Eight) and violation of NJFCRA (Count Nineteen). Finally, Dubois asserts three federal claims against FDIC-Receiver: violation of RESPA (Count Seventeen), violation of FCRA (Count Eighteen), and violation of the Federal Deposit Insurance Act (the "FDI Act"), 12 U.S.C. § 1811 (Count Twenty).

Again, all of Dubois's common law claims are barred by the applicable statute of limitations; his claim under the NJCFRA is preempted by the FCRA; and his federal claim under the FCRA is also time-barred. In addition, Dubois's claim for consumer fraud in violation of N.J. Stat. Ann. §§ 56:8-1 to -48 is before this Court through supplemental jurisdiction, and thus D.C.'s three-year statute of limitations applies. *See A.I. Trade Fin.*, 62 F.3d at 1458, 1463; D.C. Code § 12-301(8). Dubois's federal claim under RESPA is also subject to a three-year statute of limitations. 12 U.S.C. § 2614. As discussed above, any alleged misconduct—and thus any violation of New Jersey law or

RESPA—occurred no later than January 2006, the latest date provided in the Complaint for any purported misconduct by any of the defendants. *See* Compl. ¶¶ 91-92. Thus, even when construing the Complaint in the light most favorable to Dubois, his claims in Count Eight and Seventeen against FDIC-Receiver are time-barred and must be dismissed.

Finally, plaintiff asserts a claim under the FDI Act and seeks declaratory and injunctive relief, not limited to an order granting the claim he filed against FDIC-Receiver on April 9, 2009. *See* Compl. ¶ 218. However, putting aside the issue of whether Dubois exhausted his administrative remedies, this Court lacks subject matter jurisdiction to grant the relief he seeks against FDIC-Receiver. *See* 12 U.S.C. § 1821(j) ("Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver."); *Freeman v. Fed. Deposit Ins. Co.*, 56 F.3d 1394, 1398 (D.C. Cir. 1995) (citing same). Therefore, the Court must dismiss plaintiff's FDI Act claim pursuant to Rule 12(b)(1). Accordingly, all claims against FDIC-Receiver are hereby DISMISSED.

## VII. FDIC-Corporate

Dubois asserts the same claims he asserted against FDIC-Receiver against FDIC-Corporate. In so doing, he has failed to recognize that FDIC-Corporate is a separate legal entity from FDIC-Receiver. *See, e.g., Fed. Deposit Ins. Corp. v. Bank of Boulder*, 911 F.2d 1466, 1473 (10th Cir. 1990); *Fed. Deposit Ins. Corp. v. Nichols*, 885 F.2d 633, 636

(9th Cir. 1989); *In re F& T Contractors*, 718 F.2d 171, 173, 180-81 (6th Cir. 1983); *Gunter v. Hutchenson*, 674 F.2d 862, 873-74 (11th Cir. 1982); *Pageland 29 Ltd. P'ship v. Fed. Deposit Ins. Corp.*, No. 91-1858-LFO, 1992 WL 391377, *2 (D.D.C. Dec. 14, 1992). In its corporate capacity, the FDIC acts as an insurer of bank deposits, *see* 12 U.S.C. § 1821(a), while as a receiver it manages the assets and liabilities of failed institutions, *see* 12 U.S.C. § 1821(d)(2)(A) & (i)(2). Most importantly here, FDIC-Receiver, and not FDIC-Corporate, becomes a party to a failed bank's agreements by operation of law, and FDIC-Corporate would only become a party to those agreements by acquiring them from FDIC-Receiver. *See* 12 U.S.C. § 1823(d)(3)(A). Therefore, any liability alleged to arise out of the acts or obligations of the failed bank—in this case, WaMu—which remained with the Receiver must be asserted solely against FDIC-Receiver, not FDIC-Corporate.

In light of the separate legal identities of FDIC-Receiver and FDIC-Corporate, all claims against FDIC-Corporate must be dismissed for failure to state a claim for relief that is plausible on its face. *See Iqbal*, 129 S. Ct. at 1950. The only factual allegation Dubois asserts concerning the FDIC in any capacity is that FDIC-Receiver denied his claim and that his Complaint was timely filed thereafter. *See* Compl. ¶¶ 108-110. All other allegations in the Complaint regarding FDIC are in the Claims for Relief, which also go to the functions of FDIC-Receiver and not FDIC-Corporate. Therefore, because plaintiff has not alleged any facts that would permit the reasonable inference that FDIC-

Corporate is liable for any purported misconduct, all claims against FDIC-Corporate are also DISMISSED.

## VIII. Fannie Mae

Finally, Dubois asserts the same nineteen claims against Fannie Mae that he asserted against both FDIC-Receiver and FDIC-Corporate. All of the claims against Fannie Mae are DISMISSED for the same reasons as those against FDIC-Receiver, except plaintiff's claim in Count Twenty pursuant to the FDI Act. As to the claim in Count Twenty against Fannie Mae, Dubois has failed to identify any purported misconduct on the part of Fannie Mae in violation of the FDI Act. All of his allegations in Count Twenty address FDIC-Receiver's purportedly wrongful actions in denying his claim. *See* Compl. ¶¶ 215-18. Plaintiff's citations to newspaper articles in his Opposition to Fannie Mae's Motion to Dismiss does not cure his failure to state a claim for relief under the FDI Act against Fannie Mae in his Complaint. *See, e.g.,* Pl.'s Opp'n to Fannie Mae's Mot. to Dismiss [#32] at 4 n.5. Therefore, the remaining claim against Fannie Mae must also be DISMISSED.

## CONCLUSION

For all of the foregoing reasons, the defendants' Motions to Dismiss are GRANTED, and Dubois's Complaint is DISMISSED with prejudice. An Order consistent with this decision accompanies this Memorandum Opinion.

/s/ Richard J. Leon
RICHARD J. LEON
United States District Judge